## CARD *vs.* BIRD and others.

Where L. and his wife mortgaged the land of the wife to B., and the wife subsequently died without having had issue, and B. assigned his mortgage to F., who subsequently assigned it to D., and after the first assignment of the mortgage, C., who was the heir at law of the deceased wife of L., sold his equity of redemption in the mortgaged premises to L., and took a mortgage for $500 of the purchase money, from B., to whom L. conveyed the premises at the same time that he received the deed therefor from C., and B. at the time such deeds and mortgage were executed concealed the fact from L. and C. that he had before assigned his prior mortgage upon the premises, and upon the settlement of the residue of the purchase money due from B. to L. upon the sale of the premises to B., the amount of the prior mortgage of L. and wife was allowed, and B. also agreed to pay and discharge a judgment against L. which was docketed before such conveyances were executed, and another judgment against him which was docketed a few hours after the execution of such conveyances; *Held*, that the first mortgage given by L. and wife, in the hands of D. the assignee, was a valid and subsisting in-

cumbrance upon the premises, and was entitled to a preference in payment over the subsequent mortgage to C.

*Held also*, that as the seisin of L. in the premises, under the deed from C., was but for an instant, the giving of the deed to B., and the taking of the $500 mortgage to C. for a part of the purchase money, gave the holder of that mortgage the right to a preference in payment out of the proceeds of the mortgaged premises over the prior judgment against L.

And B. having given another mortgage upon the premises to D. subsequent to the agreement of B. to pay and discharge the two judgments against L.; *Held*, that D. being a bona fide mortgagee of the interest of B. in the premises without notice of such agreement, such mortgage was entitled to a preference in payment out of the proceeds of the mortgaged premises, over the holders of the second judgment against L. which was only an equitable lien upon the premises in the hands of B. under that agreement.

Whether the equitable lien of that judgment, upon the premises, as a part of the unpaid consideration of B.'s purchase, entitled it, in equity, to a preference in payment over previous judgments against B. *Quære?*

A complainant who has parted with all his interest in the subject of the litigation, pendente lite, cannot appeal from a decision which injuriously affected such interest.

Nor can a party appeal from those parts of a decree which do not affect his interest.

THIS was an appeal from a decree of the vice chancellor of the fifth circuit, in relation to the marshalling of the claims and securities of the several parties upon the mortgaged premises, in a foreclosure suit. The mortgaged premises originally belonged to Mrs. M. Tuttle, who subsequently married A. Lull, and died without having had any issue by him, leaving her father, P. Card, her only heir. Previous to her death, she and her husband gave to the defendant A. A. Bird a mortgage upon the premises, on which mortgage there was due on the 12th of December, 1834, the sum of $648,45. On the 19th of the same month, Bird assigned the mortgage to D. Frost, for the consideration of $600 ; and Frost afterwards assigned the same to W. H. Chandler, one of the defendants in this suit. After the death of Mrs. Lull, a controversy arose between the surviving husband and her father, as to the right to the mortgaged premises ; which controversy was compromised by an agreement that the latter should quit-claim his right to the former, for the consideration of $600, of which sum all, except $100 to be paid down, was to be secured by a mortgage upon the

premises. And as Lull had contracted to sell the premises to the defendant Bird, both agreements were carried into effect at the same time, on the 17th of March, 1835, by a conveyance from P. Card to Lull, and a conveyance from the latter to Bird, and by a bond and mortgage from Bird to P. Card upon the same premises, to secure to the latter the $500 of the purchase money which Lull had agreed to have secured by mortgage on the land conveyed. That mortgage was subsequently assigned to S. Card, the complainant in this suit. Bird, at the time of the conveyance to him, concealed the fact that he had assigned his previous mortgage upon the premises to Frost; and when Lull settled with him for the residue of the purchase money beyond the $500 secured to be paid to P. Card, one or two days afterwards, Bird gave to Lull a writing in which he acknowledged that the mortgage given by Lull and wife was satisfied.

At the time of the conveyance from Card to Lull, and from the latter to Bird, there was an outstanding judgment against Lull, in favor of Hersey & Barton. Another judgment was entered up against Lull, in the supreme court, on that day, in favor of the defendant Webb, under which the premises were afterwards sold and bid in by Webb & Averill. And one disputed question of fact in the cause was whether the last mentioned judgment, which was docketed at 11 o'clock in the forenoon, was docketed before the conveyance from Lull to Bird was executed, so as to become a legal lien upon the mortgaged premises, and entitled to a preference over the mortgage to Card ; and over a subsequent mortgage given to the defendant Chandler, by Bird. At the time of the settlement with Bird for the purchase money of the premises, on the 19th of March, 1835, he assumed the payment of this judgment, and of a previous judgment against Lull for about $90, in favor of Hersey & Burton, as a part payment of the consideration of the conveyance. And he gave to Lull a written stipulation to that effect.

In April, 1836, the complainant S. Card, as the assignee of the mortgage given by Bird to his father, filed his bill

1843.

Card
v.
Bird.

in this cause, to foreclose that mortgage, and made the mortgagor, and Chandler, Hersey & Benton, Webb & Averill, and several judgment creditors of Bird, whose judgments were claimed to be liens upon the mortgaged premises, defendants in the suit. The bill, after setting forth the agreements under which the conveyances and the mortgage of the 17th of March, 1835, were executed, and the claims of Hersey & Benton, and of Webb & Averill, to priority over the complainant's mortgage, alleged that on the 1st of November, 1834, the title of the mortgaged premises being then in Mrs. Lull, she and her husband executed and delivered, under their hands and seals, a mortgage upon the premises to the defendant Bird, and that at the time of making the subsequent conveyance from Lull to Bird, after her death, Lull accounted with Bird for the amount due on such mortgage, and allowed him the same out of the consideration due and payable upon the sale. And the bill denied that such mortgage was assigned by Bird to Frost previous to the conveyances from P. Card to Lull, and from Lull to Bird, as pretended by the assignee of the mortgage.

The defendants Chandler, and Webb & Averill, put in their separate answers to the bill, and the other defendants suffered it to be taken as confessed against them. Chandler by his answer admitted and insisted, among other things, that the judgment of Webb was not recovered and docketed until after the conveyance from Lull to Bird, and that it never was a lien or incumbrance upon the premises. He also admitted, as charged in the bill, that the title was in Mrs. Lull on the 1st of November, 1834, and that she and her husband on that day executed the mortgage to Bird as therein stated, and that the same was acknowledged and recorded. The answer also set out the assignment of that mortgage to Frost, on the 19th of December, 1834, and a subsequent assignment from Frost to Chandler previous to the commencement of this suit; and Chandler insisted therein that if the defendant Bird, at the time of the conveyance from Lull to him, received payment of such mortgage, he did it without authority. He also insisted, that Bird having received

a conveyance of the premises from Lull after he had himself assigned this mortgage to Frost, the mortgage continued a valid incumbrance upon the premises, in the hands of Bird, at the time of the execution of the mortgage to P. Card, and was entitled to a priority ; the whole amount of which mortgage so assigned to Frost was still due to him, Chandler, except $400 which was paid to Frost by Bird, in July, 1835, and before the assignment of the mortgage to Chandler. This defendant also set up in his answer another mortgage upon the premises, for $1000, given to himself by Bird in July, 1835 ; the whole of which, with the interest thereon, was still due and unpaid.

And the defendants Webb & Averill, in their answers, alleged and insisted that the judgment of Webb against Lull was recovered and docketed before the conveyance of the premises to Bird ; and was entitled to a preference over the mortgage given by Bird to P. Card and assigned to the complainant ; and that Bird agreed with Lull, in writing under his seal, on the said seventeenth day of March, 1835, that the judgment of Webb was a valid and subsisting lien on the premises, and that the amount thereof should be paid out of the consideration money agreed to be paid on the purchase of the premises by him. Replications were filed to these answers, and after the proofs in the cause had been partially taken, the complainant assigned all his interest in the subject matter of the suit to the defendants Webb & Averill. And an order was thereupon made, by the vice chancellor, with the consent of the counsel for the complainant, and for the defendants Chandler and Webb & Averill, directing among other things, that Webb & Averill be permitted to sustain the allegations in their answer, in the same manner that they might have done if they had not become the owners of the complainant's interest in the suit ; and to rebut by proof the claims and defence of Chandler, the same as if an issue had been taken thereon and a replication put in to his answer by them ; and that they should be deemed and regarded in all future proceedings in the cause, subject to the same liabilities and to the payment of the same costs, as if they were the com-

plainants. Under this order the cause was subsequently brought to a hearing between these parties, upon pleadings and proofs. And the vice chancellor decided and decreed that the judgment of Webb should be postponed to the second mortgage of Chandler, and to all other liens on the premises, as against the defendant Bird, and reserved the question as to the rights of Webb & Averill against Bird, in case there should be a surplus ; that the mortgage assigned by Frost to Chandler, together with the costs of the latter, should be first paid to the defendant Chandler out of the proceeds of the sale of the mortgaged premises ; that the complainant's mortgage, and costs to be taxed, should be next paid out of such proceeds ; that the mortgage given by Bird to Chandler, and all other existing liens upon the premises, against Bird, should be then paid in their order of priority ; and that the surplus, if any, should be brought into court to abide its further order. The decree also contained the usual directions referring it to a master to ascertain and report the several amounts due; and for a sale of the mortgaged premises upon the confirmation of the master's report, &c.

The complainant appealed from all those parts of the decree whereby it was adjudged that Webb's judgment should be postponed to Chandler's second mortgage, and to other liens upon the premises against Bird, and reserving the question as between Webb & Averill and Bird, in case of a surplus ; and from so much as directed the mortgage assigned by Frost to Chandler, and the costs of the latter to be first paid ; and also from so much of the decree as directed the complainant's mortgage and costs to be next paid from the proceeds of the mortgaged premises.

When the appeal came on to be heard, the chancellor suggested that the complainant who had parted with all his interest in the subject matter of the litigation, could not appeal from the decree; and that the order by consent in the court below did not extend to proceedings upon the appeal, so as to authorize his assignees to appeal in his name. And that even if Card had continued the owner of the mortgage, for the foreclosure of which the bill was filed,

he could not appeal from those parts of the decree in which he had no interest, in order to settle the rights of Chandler, and of Webb & Averill, as between themselves as defendants. The counsel for both parties thereupon consented that the notice of appeal should be amended so as to make it an appeal by Webb & Averill the real parties in interest, and that they should cause the amended notice of appeal, and an appeal bond to the defendant Chandler, to be filed nunc pro tunc. Under this agreement the chancellor consented to hear the appeal between these parties upon the merits; but without prejudice to the rights of the other defendants who had not assented thereto, and as to whom the time for Webb & Averill to appeal from the decree had expired.

The following is the opinion of the vice chancellor:

GRIDLEY, V. C. A former decree in this cause was entered by consent of the then litigant parties, giving to a judgment of Webb & Averill against Almon Lull a preference over all the other liens on the premises embraced in the mortgage now sought to be foreclosed in this suit except such mortgage. That decree has been set aside on terms, and Chandler, who claims under two mortgages, has been let in to defend. There are several principal questions involved in this cause.

1. Is the mortgage, executed by Lull and wife to Bird in November, 1834, and assigned by Bird to Frost in December, 1834, and by Frost to Chandler in April, 1836, a valid and subsisting incumbrance? The premises were owned by Mrs. Lull, who died without ever having had any lineal heirs. Of course the interest of her husband ceased at her death, and it then became an important question whether the mortgage was so executed by her as to pass her estate. It is said by the counsel of the complainant, that it never was so acknowledged by her as to pass the real estate of a married person. To this various answers are given: 1. That no such question is at issue here, the mortgage having been set out in the bill and admitted, &c.

in the answer and no such objection taken to its validity ;
2. That it was given for a debt of the wife (the erection of
a house on the premises) and that she would be and her
estate would be equitably bound to pay the debt secured
by the mortgage, though the mortgage should not be a lien ;
3. That the mortgage, or rather the certificate, is not so in
evidence as to enable the plaintiff to take this objection ;
4. That the party is for divers reasons estopped from deny-
ing the proper execution of the mortgage.  The certificate
does, upon a fair construction of it, show such an examina-
tion and acknowledgment as the statute requires.  It de-
clares that on the first day of November, 1834, Thomas
Barlow, known to the commissioner, came before him
and testified that he resided in Lenox, &c. ; that he knew
Mary Lull to be the person desbribed in and who exe-
cuted the said mortgage, and he saw her execute it.  Here
is a dash, thus ——, indicating a stop, after which the
certificate proceeds thus :  " And on a private examination,
separate and apart from her said husband, she acknowledg-
ed, &c. according to the requisitions of the act in relation
to the acknowledgment by married women."  The wording
of this certificate is certainly somewhat obscure, but it is
susceptible of a construction which will make the taking
of the acknowledgment the act of the commissioner ; and
such would be most clearly the only legitimate construc-
tion, were it not that the certificate closes with a statement
of what the witness further testifies to.  As it is, however,
I think it right to adopt this construction of the certificate,
(the recording officer having done the same,) especially as
the witness, who is the solicitor who filed this bill and
the commissioner who made this certificate, must have
known that an acknowledgment to the witness only would be
void.  And I would not willingly, by a different construction,
impute to respectable persons the brand which would in
that case attach to the transaction ; and more especially
would I hold this certificate good since the complainant's
solicitor (knowing this execution to be void if there was
no proper acknowledgment by the wife) has omitted to put

this fact in issue and to give any evidence impeaching the certificate, and that too, when it was the interest of his client to state all objections to the mortgage, and when he did allege other facts to show it paid and extinguished. I therefore hold the mortgage properly executed on this ground as well as on the others which I have not examined particularly, but which, especially as this ground is not within the issue, seem to me fatal to the objections.

2. Another and the main question in this case is whether, as between the complainant's mortgage and the one herein before mentioned, the latter is not to be deemed to be paid and postponed, if not utterly rejected.

The complainant is the assignee of Peleg Card, who was the father and heir of Mary Lull, the owner of the premises. On her death the father claimed the premises as against Lull, who claimed by virtue of a deed which was said not to have been properly acknowledged. The father and Lull compromised; the former agreeing to take $600, $100 down and $500 in a mortgage executed under the following circumstances. On the 17th March, 1835, P. Card quit-claims his interest in the premises to Lull, and Lull conveys to Bird, and Bird fraudulently concealing the fact that he had sold and transferred his prior mortgage to Frost, claims of Lull the amount of said mortgage in payment of so much of the purchase price of the said premises, and Lull, ignorant of the assignment, allows such amount in part payment of said purchase price of the said premises, and procures Bird to execute the $500 mortgage on the same premises to Peleg Card, to apply on the price of said premises to that amount. Now it is very clear that Lull, having no notice of the assignment to Frost, would be protected in paying Bird the amount of the mortgage; and had he continued to hold the land, it would have been discharged of the lien of the mortgage. But it is equally clear that when the conveyance was made to Bird, he took the land subject to this outstanding mortgage in the hands of Frost. He was a purchaser with notice of the rights of Frost; and to allow him to hold

the land discharged of the mortgage would be to sanction the grossest fraud.

It is settled that, as against any purchaser of the premises of Bird, or any third person having any latent equity, the record of this mortgage and the non-production of the security would be such notice as would postpone any such claim to that of the outstanding senior mortgage in the hands of the assignee. (2 *Cowen*, 289, 298. 2 *Vesey*, 438.) P. Card, in order to have his mortgage take preference over the senior mortgage, must show himself a bona fide purchaser without notice. And he is bound by the record notice of this outstanding mortgage; uncancelled and unsatisfied of record, making it incumbent on him to call upon Bird for the production of the mortgage, otherwise he must run the peril of an assignment. It occurred to me at first that the purchaser or mortgagee, pending the fee of Bird, might lawfully presume that the mortgage was merged in the fee and thus extinguished. Further reflection, however, has satisfied me that this is an erroneous view of the case. For if that were so, the registry act might be defeated any day. In this case Bird might sell or mortgage the premises to any person; and if such person would take good title, the mortgage security would be worthless. Because the recording the assignment of the mortgage would not be notice. (*James* v. *Morey*, 2 *Cowen*, 346.) And to protect himself, the assignee must give actual notice to all the world. The true view of the rights of the parties is that Lull (so far as he is concerned) has paid this mortgage, but it remains a lien on the premises in the hands of Bird and of all others who take deeds or mortgages from him; and the same rule would have applied to Lull had he taken a mortgage for the residue of his purchase money. Lull got the full benefit of the sale when his obligation was discharged. The consequence is that the senior mortgage is the first lien on the premises, and is first to be satisfied out of the premises, and the complainant's mortgage is the next lien and is next to be satisfied; and I am glad to learn that the premises are understood to be abundantly sufficient to pay both incumbrances, and much more besides.

3. Webb & Averill obtained a judgment against Lull, which was docketed the same day that Lull conveyed to Bird, but after the fee had passed to Bird, and therefore was no lien whatever upon the premises. It appears that, two days after the execution of the deed to him, Bird executed a paper recognizing a judgment of $89,79, and another judgment doubtless intended as the judgment of Webb & Averill before mentioned, as demands which were assumed by Bird to be paid by him, and to answer as so much paid of the purchase price of the said premises. Upon this state of facts it is insisted by the counsel of Webb & Averill, that although their judgment is not a lien on the premises strictly speaking, yet they are to be regarded as standing in the place of Lull; inasmuch as Bird assumed to pay them the amount of the judgment as so much of the purchase price of the premises due to Lull, and thus holding an equitable lien for the amount of their judgment as consideration money upon the premises in question.

The counsel has argued with much zeal and ingenuity to show that such interest does exist on the part of Webb & Averill, and that it is a good and valid lien, and not only against Bird, but against Chandler, a junior mortgagee, who is admitted to have advanced the money and taken the mortgage without any notice of such equitable lien. I cannot, however, doubt for a moment that this position is wholly untenable.

1. It is very doubtful whether Webb & Averill can be deemed to have ever had a right to claim such equitable lien. The presumption which ordinarily obtains in favor of a vendor, that he retains a lien for the purchase money, does not exist here. This would seem to be no more than an agreement of Bird (a third person) to pay Lull's debt. Lull was not discharged of his obligation to Webb & Averill; as between Lull and Bird, the latter was bound to pay this debt.

2. It does not appear that Webb & Averill ever assented to such a claim, or recognized it in any shape whatever. On the contrary, they have pursued their supposed legal remedy

on the judgment, and have sold the premises and are now in possession.    All this is inconsistent with the present claim, and so is the claim put forth for them, on the record, inconsistent with the supposition of such equitable lien.

3. Independently of these difficulties, such equitable lien was never allowed to prevail against a bona fide purchaser without notice.    Why ?  Because whoever should desire to take a deed or a mortgage of premises thus situated would go to the record and search, and not finding any such lien recorded, he would purchase a title wholly discharged from such lien.    Even if the vendor had taken a mortgage in writing and omitted to get it recorded, he would have lost his lien as against Chandler's second mortgage.    And shall he now be holden to retain it on a mortgage resting merely in parol ?

This position cannot be maintained either on the ground of law, reason, or justice.   The mistake is in supposing that a mortgagee is not a bona fide purchaser, within the meaning of the term when used in reference to such a claim. The definition of the revised statutes, and numerous authorities, sanction the application of the term purchaser to a mortgagee ; and especially in reference to its application to a question of this kind, there can be no doubt.    Of course this judgment and equitable claim must be postponed to Chandler's second mortgage and to all other liens on the land against Bird.  Should there be a surplus, I will not now say that Webb & Averill might not be entitled thereto as against Bird, on application, as was suggested on the argument.  On that point, I express no opinion.   As there are several other liens belonging to persons not represented here, there must be a reference to compute, &c. as to said liens, and a decree will pass for a sale.   And out of the proceeds the master will first pay Chandler the amount due on his senior mortgage and his costs of defence to be taxed ; secondly, the complainant's mortgage and his costs to be taxed ; next, Chandler's second mortgage and such other liens, in their order, as exist against Bird and were liens on the premises ; and if there be a surplus, the same must be paid into court to await the further order of the court.

1843.

Card
v.
Bird.

. *J. Rhoades,* for the appellants. The mortgage of Lull and wife to Bird was not proved or acknowledged, so as to make it evidence, or to give it validity as against the estate of Mary Lull. (1 *R. S.* 759, § 16. 3 *Paige,* 121. 16 *John.* 110, 113. 20 *Idem,* 304. 6 *Idem,* 149. 11 *Idem,* 434. 2 *Cowen,* 553. 4 *Wend.* 563. 13 *Idem,* 537.) The complainant may deny the valid execution of the mortgage, although he claims title under Mary Lull. This denial is not inconsistent with such claim. But this mortgage has been satisfied. The amount due on it was deducted from the purchase money, on the sale from Lull to Bird. Lull and P. Card had no notice of Bird's assignment of the mortgage to Frost. They, having no notice of the assignment, could satisfy the mortgage, and the assignee would be bound by its payment to Bird. And Lull had a right to suppose that, by the conveyance to Bird, there would be a merger of the mortgage. (2 *Cowen,* 303, 313.) It was the intent of the parties to satisfy it. Card's mortgage was for the purchase money, and is to be favored. Lull and Bird derived title from Card; and they are therefore estopped from denying it. Card, by taking back a mortgage for the purchase money, could not obtain a worse title than he gave. Card had not even constructive notice of the assignment of Bird's mortgage to Frost. Webb & Averill have an equitable lien on the mortgaged premises for the amount of the judgment of Webb against Lull, as a part of the unpaid purchase money, and they are entitled to a preference in payment over the subsequent mortgage of Chandler. (7 *Paige,* 103, 106. 1 *Idem,* 502.)

*W. Tracy,* for the respondent. The complainant cannot impeach the execution of the mortgage from Lull and wife to Bird, he having admitted it in his bill, and it not being matter in issue. The complainant being the grantee of Bird who was a party to the mortgage, he is estopped from denying its execution. And by the arrangement between him and Lull and Bird, he affirmed the mortgage. The

conveyance of P. Card to Lull, enured to the benefit of A. Frost, the then holder of Lull's mortgage. (*Jackson* v. *Bull*, 1 *John. Cas.* 90. *Jackson* v. *Murray*, 12 *John. R.* 201. *Stevens* v. *Stevens*, 13 *Idem*, 316. *Wilson* v. *Troup*, 2 *Cowen*, 238. *Barber* v. *Harris*, 15 *Wend.* 615. *Oakley* v. *Stanley*, 5 *Idem*, 524. *Wadsworth* v. *Wendall*, 5 *John. Ch. R.* 224.) The complainant holding merely the equities of Bird, when he asks the interposition of the court for his relief, must do equity. He must not ask to be enabled to profit by his mortgagor's fraud. If, under the circumstances, Bird's mortgage to Card should be held the senior lien, Lull having affirmed the mortgage of Lull and wife and Bird purchasing subject to it, it is certainly a valid mortgage next in order. The mortgage from Lull and wife to Bird, and by him assigned to Frost, and by Frost to Chandler, has never been extinguished, and it is the senior lien on the land. Bird purchased the land with notice of the mortgage and in actual fraud of both Lull and Frost. He therefore took subject to Frost's lien. And the mortgage being regularly recorded, it was notice to subsequent purchasers or mortgagees. The arrangement of March 17, 1835, was no proof to Card of the satisfaction of the mortgage. The want of possession of the mortgage by Bird should have put Card upon his guard. (2 *Cowen*, 289. *James* v. *Mory*, *Idem*, 298. *Mead* v. *Lord Percy*, 3 *Atk.* 328. 2 *Ves. jun.* 438. *Jewell* v. *Palmer*, 7 *John. Ch. Rep.* 65. *Harrison* v. *Southcote*, 1 *Atk.* 538. *Story* v. *Lord Winsor*, 2 *Idem*, 630.) The fact that Peleg Card was a party to the arrangement between Lull and Bird does not vary the rule governing the case. Card is not in the place of a purchaser in good faith. He has given no new consideration. (*Brown* v. *Heathcote*, 1 *Atk.* 160, 162. *Cock* v. *Goodfellow*, 2 *P. Wms.* 430. *Paddy* v. *Rose*, 3 *Merrivale*, 86. *Peacocke* v. *Rhodes*, *Douglass*, 636. *Twyne's case*, 3 *Coke*, 80. *Upson* v. *Basset*, *Cro. Eliz.* 445. *Jackson* v. *Myer*, 11 *Wend.* 538. *Root* v. *French*, 13 *Idem*, 572.) The judgment of Webb was

never a lien on the premises. (*Ells* v. *Tousley*, 1 *Paige*, 280. *In re Howe, Idem*, 125.)

THE CHANCELLOR. I have no doubt that the vice chancellor arrived at the correct conclusion, that the execution of the conveyances from Card to Lull, and from the latter to Bird, took place in the morning of the 17th of March, and before the entry and docketing of Webb's judgment against Lull. Several witnesses concur in the fact that the deeds and mortgage were executed about breakfast time in the morning, and were acknowledged and delivered immediately thereafter. And they state facts from which it is hardly possible that they should be under a mistake as to the time. That judgment, therefore, was never a legal lien on the interest either of Lull or of Bird in the mortgaged premises. And whatever the equitable claims of Webb might have been, under the written agreement of Bird, made on the 19th of March, to pay and satisfy that judgment as a part of the purchase money of the premises, it must, as a mere equitable lien, be postponed to the legal lien which Chandler acquired as a bona fide mortgagee of the premises, without notice of any equitable claim of Webb thereon under the agreement between Bird and Lull. Whether it was entitled to a preference, as an equitable lien for unpaid purchase money, over the general liens of the previous judgments existing against Bird, is a question which cannot arise upon this amended appeal to which the judgment creditors are not parties. And it could not have arisen on the original appeal in the name of the complainant. For as he never had any interest in that question, he could not have had the decree reversed or modified for an error which did not in any way affect his rights.

The remaining questions are, whether the mortgage given by Lull and wife, in 1834, was a valid and subsisting incumbrance upon the premises in the hands of Chandler the assignee; and whether, if so, it is entitled to a preference in payment over the subsequent mortgage given by Bird to P. Card? If the certificate of acknowledgment of

that mortgage was in evidence before the vice chancellor, so as to render it proper to give any opinion upon its construction, I should be inclined to think, from the two certificates endorsed upon the mortgage, at the same time, that the husband and wife both came before the commissioner, that the husband being known to him he took his acknowledgment without any evidence to establish his identity, and endorsed the certificate of acknowledgment accordingly; and that the wife being unknown to him, he examined the subscribing witness to prove her identity as the person described in and who executed the mortgage; and that she then acknowledged the execution thereof in the usual form, before the commissioner. But the certificate of acknowledgment is so inartificially drawn, that I admit there is much room for doubt as to its legal effect.

It is not necessary, however, to decide what is the effect of this mortgage as against Bird, and those claiming under him as his judgment creditors; or whether his assignment of this mortgage to Frost, for a full consideration, as a good and subsisting security upon the premises, would not in equity estop him and them from insisting that it was never executed in such a manner as to make it a valid lien upon the interest of the mortgagors in the premises. For the question here is not between the respondent and Bird, or those creditors, but between him and the appellants, as the assignees of the interest of the complainant in the suit. It must therefore be decided upon the pleadings between the complainant and the respondent, and upon such of the proofs as are pertinent to the matters put in issue by those pleadings.

By adverting to the complainant's bill it will be found to be stated, as a matter of fact, that Mrs. Lull and her husband executed and delivered this mortgage to Bird, and that it was recorded on the 7th of November, 1834. And the only questions raised in reference to it, by the bill, were whether it had been assigned to Frost prior to the conveyance from Lull to Bird? and whether it was entitled to a preference over the mortgage of the complainant? The

answer of the defendant Chandler admitted the execution and delivery of that mortgage, by Lull and wife, and the recording thereof, as stated in the bill ; and only put in issue the allegations of the complainant that it was not assigned to Frost previous to the conveyance to Bird, and as to the execution of the mortgage to P. Card, and the payment thereof, &c. Neither of those parties, therefore, nor the appellants as the assignees of the complainant, had any right to call in question the due execution of the mortgage from Lull and wife, which was thus admitted both by the bill and answer. And for all the purposes of the present appeal, it must be presumed to have been duly executed, by Lull and wife, in the manner required by law to make it a valid mortgage of the interests of both of the mortgagors in the premises.

Is this mortgage, then, entitled to a preference in payment over the mortgage of the complainant ? Although the title was first conveyed to Lull, and from him to Bird, who gave a mortgage back to Card for a part of the purchase money, it was in fact all one transaction ; so that there was but an instantaneous seizin in either, so far as related to the lien of the mortgage of Card upon the land. And his rights, as against the judgment creditors of Lull, or of Bird, were the same as if the deed had been given directly from him to Bird, and the mortgage for the purchase money had been taken back at the same time. I have no doubt, therefore, that the mortgage of Card was entitled to a preference over prior judgments against either Lull or Bird. (*Clark* v. *Monroe*, 14 *Mass. Rep.* 351. *Stow* v. *Tifft*, 15 *John. Rep.* 458. 1 *R. S.* 749, § 5.) And if the prior mortgage in this case had been executed by Bird, and had not been a lien upon the title conveyed by Card to Lull and by him to Bird, I think the mortgage given back for the purchase money would have been entitled to a preference in payment ; although Card claims through Bird, who knew that the previous mortgage had been assigned to Frost, and who could not therefore set up a want of notice of that assignment. But as Card himself had de-

rived his title to the premises under Mrs. Lull, subsequent to the mortgage from her and her husband to Bird, he only conveyed his equity of redemption in the premises, through Lull to Bird, subject to the mortgage which was then in the hands of Frost as the assignee thereof. And by the mortgage from Bird, Card got back no greater interest in the premises than he conveyed; although there was but an instantaneous seisin, in Lull and in Bird, which seisin could not give any rights to third persons as against the lien of the mortgage given for the purchase money. The vice chancellor was therefore right in giving a preference in payment to the first mortgage of the respondent, which had been assigned to him by Frost previous to the commencement of this suit. And being entitled to a preference in payment as to that mortgage, Chandler was entitled to his costs of establishing such preference, as a prior claim upon the proceeds of the sale of the mortgaged premises.

The decree appealed from is therefore affirmed with costs, to be paid by the appellants Webb & Averill. And the proceedings are remitted to the vice chancellor.